UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MARCHAK, ET AL.,

      Plaintiffs,

- against -

JPMORGAN CHASE & CO., ET AL.,

      Defendants,
-------------------------------------------------------x

**MEMORANDUM AND ORDER**
15-CV-4297 (ILG) (MDG)

GLASSER, Senior United States District Judge:

Plaintiffs are twenty-nine victims of a Ponzi scheme orchestrated by nonparty Philip Barry. In carrying out the Ponzi scheme, Barry used depository accounts at banks owned by the Defendants—JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., HSBC North America Inc., M&T Bank, and TD Bank, N.A. Alleging that Defendants were complicit in the scheme, Plaintiffs brought suit in New York Supreme Court. Defendants removed the action to this Court, arguing that although Plaintiffs' claims arise under state law, they nevertheless present federal questions substantial enough to warrant federal jurisdiction. Plaintiffs maintain that the Court lacks jurisdiction, and have moved to remand the action to state court. For the reasons given below, the motion to remand is GRANTED.

### 1. Background

For decades, Philip Barry ran a Ponzi scheme. Through a group of entities called Leverage, Barry promised to use investor funds to trade securities and generate returns, but instead misappropriated funds for his personal use, and concealed the scheme by fabricating account statements and paying investors with their own money or money paid by other investors. In the end, hundreds of investors, including Plaintiffs, lost money. Compl., Dkt. 1-1, ¶¶ 49–54.

1

Because Leverage kept investor money in depository accounts at Defendants' banks, Plaintiffs allege that Defendants knew about, or should have discovered, the Ponzi scheme. *Id.* ¶¶ 55–56, 60–68. The bank accounts allegedly did not "look[] like normal broker-dealer account[s]," because investor funds were not segregated or kept in separate subaccounts. *Id.* ¶ 57. And rather than show large cash flows corresponding to security trades, the accounts showed a substantial number of bounced checks, large dollar transactions conducted by check, and large cash withdrawals. *Id.* ¶¶ 58–59, 75. According to Plaintiffs, these "highly suspicious activities" are "the very nuts and bolts of a Ponzi scheme." *Id.* ¶¶ 1, 58.

Plaintiffs claim that Leverage's activities should have caused Defendants to discover and expose the Ponzi scheme because banks are required to monitor and report suspicious activity. Plaintiffs cite sections of the Bank Secrecy Act, 31 U.S.C. § 5311, *et. seq.* (as amended in 2001 by the Patriot Act) (BSA), federal regulations, and regulatory guidance that require banks to create anti-money laundering (AML) and know-your-customer (KYC) programs, in which banks take steps to learn about their customers, monitor account activity, and report suspicious transactions to federal agencies. *See id.* ¶¶ 3–7, 69, 75–76. In addition, Plaintiffs vaguely reference unspecified state law and Defendants' internal policies and procedures, and allege that, even before the Patriot Act, KYC programs were standard in the banking industry. *See id.* ¶¶ 2, 6, 8, 186, 188. Plaintiffs allege that Defendants either failed effectively to execute their AML and KYC programs, "suppressed" warning signs, or "willingly turned a blind eye to indicia of fraud," and thus "facilitated and enabled" Barry's scheme. *Id.* ¶¶ 1, 10–11, 80.

Plaintiffs assert seven state law causes of action: (1) knowing participation in a breach of trust; (2) aiding and abetting fraud; (3) aiding and abetting breach of fiduciary duty; (4) aiding and abetting conversion; (5) unjust enrichment; (6) fraud on the regulator; and (7) negligence.

2

## 2. Procedural History

### 2.1. The Prior Action

In 2011, twenty-eight of the twenty-nine Plaintiffs (with forty-six other individuals) brought in New York Supreme Court a complaint (nearly identical to the one now before the Court) against Defendants, who removed it to federal court. *See Marchak v. JPMorgan Chase & Co.*, 11-CV-5839 (E.D.N.Y) (Brodie, J.). That action was dismissed under the Securities Litigation Uniform Standards Act (SLUSA), which provides for the removal *and* dismissal of "class actions alleging state law violations [] premised on deception 'in connection with the purchase or sale of a covered security.'" *Marchak v. JPMorgan Chase & Co.*, 84 F. Supp. 3d 197, 206 (E.D.N.Y. 2015) (quotation and citation omitted) ("*Marchak I*"). Defendants argued that the plaintiffs' claims were precluded by the SLUSA, or, alternatively, removable because they presented a federal question. *See* 28 U.S.C. §§ 1331, 1441, 1446. The plaintiffs argued that the SLUSA did not apply, and moved to remand on the ground that the district court lacked subject-matter jurisdiction. Rejecting the first argument, and therefore dismissing the action, the court held that because "[the] action [fell] within the scope of SLUSA" it need not address the second argument, namely that there were no other grounds for jurisdiction. *Id.* at 220 n.12.

### 2.2. The Present Action

On June 3, 2015, Plaintiffs initiated this action in New York Supreme Court, Kings County. *See* Dkt. 1-1. This time, by limiting their number to twenty-nine, Plaintiffs avoided the SLUSA's numerosity threshold. *See generally* 15 U.S.C. § 78bb(f)(5)(B) (the SLUSA applies to "covered class actions"—actions brought on behalf of more than fifty persons). Defendants removed the action. Dkt. 1. Plaintiffs now move to remand. Dkts. 12–13.

## 3. Analysis

In support of their motion, Plaintiffs make two arguments. First, Plaintiffs argue that *Marchak I* and principles of collateral estoppel bar Defendants from asserting federal-question jurisdiction as a basis for removal. Alternatively, Plaintiffs argue that despite their reliance on the BSA and federal regulations, their claims do not present a substantial federal question. The Court rejects the first argument but accepts the second, and therefore grants the motion to remand.

### 3.1. Collateral Estoppel

Defendants are not collaterally estopped from asserting federal-question jurisdiction as a basis for removal. Collateral estoppel—or issue preclusion—bars a party from relitigating issues that were, among other things, "actually litigated and decided in [a] previous proceeding." *Westchester v. U.S. Dep't of Hous. & Urban Dev.*, 778 F.3d 412, 417 (2d Cir. 2015). *Marchak I* did not decide whether Plaintiffs' state law claims present a federal question. Rather, it found jurisdiction under the SLUSA, and, in line with that statute, dismissed the complaint. The resulting issue preclusion, if any, is limited to *Marchak I*'s application of the SLUSA.

Because *Marchak I* did not decide whether Plaintiffs' state law claims raise a question of federal law substantial enough to warrant the exercise of federal-question jurisdiction under 28 U.S.C. § 1331, Defendants are not estopped from litigating that issue here.[1]

### 3.2. Removal

Defendants—the removing parties—bear "the burden of demonstrating that removal was proper." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (quotation omitted). Because the parties are not diverse, removal can be justified only if the Court has

---

[1] Plaintiffs baldly assert that *res judicata*—or claim preclusion—bars Defendants from invoking federal-question jurisdiction. *See* Pl. Mem. at 7–8. This assertion is frivolous; *res judicata* applies only when the prior action resulted in a final judgment on the merits.

4

federal-question jurisdiction—that is, if one of Plaintiffs' claims "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see id.* § 1441(a); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005). If the Court lacks federal-question jurisdiction, the action must be remanded to state court. *See* 28 U.S.C. § 1447(c).

It is undisputed that the Complaint asserts only state law claims. The BSA does not authorize a private right of action. *See In re Agape Litig.*, 681 F. Supp. 2d 352, 360–61 (E.D.N.Y. 2010); *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326–27 (D. Conn. 2008).

However, in a "small category" of cases, federal jurisdiction may lie over a state law claim. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)); *see also Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Specifically, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. When "these requirements are met, [federal] jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quotation omitted).

Citing the Complaint's references to the BSA and federal regulations—and to the banks' AML and KYC programs—Defendants argue that federal issues "underpin[] Plaintiffs' entire Complaint," particularly the negligence and fraud-on-the-regulator claims. Def. Mem. at 10; *accord id.* at 3–4. Plaintiffs, in contrast, argue that their claims "rely on legal duties imposed under state law," and that "federal statutes merely provide[] a factual background . . . and a basis to allege [Defendants'] knowledge" of the Ponzi scheme. Pl. Mem. at 12.

5

As elaborated below, Plaintiffs' claims do not *necessarily* present a *disputed* issue of federal law. "The focus of this action is not whether the Defendants violated [the BSA], but rather whether their conduct violated a duty owed to the Plaintiffs under state law." *Whittington v. Morgan Stanley Smith Barney*, 2012 WL 4846484, at *3 (W.D.N.C. Oct. 11, 2012) (holding that plaintiffs' reliance on the BSA to show banks' negligence in failing to expose Ponzi scheme did not present a federal question); *see also Shtutman v. TD Bank, N.A.*, 2014 WL 1464824, at *3 (D.N.J. Apr. 15, 2014) (same). And determining whether Defendants' conduct violated a duty owed under state law will not necessarily require the Court to construe or apply the BSA.

Under New York law, a violation of the BSA would be, at most, evidence of negligence—not negligence *per se*. "Neither party cites, and the court's own research has not located, any New York case in which violation of a federal statute was held to establish negligence *per se*." *Lugo v. St. Nicholas Associates*, 2 Misc. 3d 212, 218 n.4 (N.Y. Sup. Ct. 2003) (citing *Elliott v. City of New York*, 95 N.Y.2d 730 (2001)) (suggesting that only violations of statutes passed by the New York state legislature may be negligence *per se*). Even if in some cases violations of federal statutes could establish negligence *per se*, violations of the BSA would not. Negligence *per se* is available only when "the plaintiff is a member of the class intended to be benefited by the statute" and "the statute is intended to protect against the very hazard that caused the plaintiff's injury." *Coene v. 3M Co. ex rel. Minnesota Min. & Mfg. Co.*, 2015 WL 5773578, at *5 (W.D.N.Y. Sept. 30, 2015) (quotation omitted). The BSA does not meet that standard, as courts have repeatedly held that "a bank's duty [under the BSA] is owed *only* to the government and not to private parties." *Pub. Serv. Co. of Oklahoma v. A Plus, Inc.*, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011) (citing cases).

6

Because negligence can be established in other ways (such as by reference to industry standards, internal policies, or state law), violation of the BSA is just one possible theory of liability. And "a claim supported by alternative theories . . . may not form a basis for [federal] jurisdiction unless [federal] law is essential to *each* of those theories." *Hiciano v. Tower W., Inc.*, 2015 WL 3606370, at *3 (S.D.N.Y. June 9, 2015) (emphasis added) (brackets in original) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988)) (citing *Broder*, 418 F.3d at 194); *see also Springsted v. Valenti Motors, Inc.*, 2016 WL 2977235, at *3 (D. Conn. May 20, 2016) (citing *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140 (2d Cir. 2012)) (noting that if "each of the counts in the Complaint could be resolved without resort to federal law, [the] case does not *necessarily* raise a federal question"); *In re The Reserve Fund Sec. & Derivative Litig.*, 2009 WL 3634085, at *6 (S.D.N.Y. Nov. 3, 2009) ("That federal law might serve to provide a standard of care . . . is an insufficient foundation for the exercise of federal jurisdiction.").

Defendants' counterargument is unpersuasive. They argue that because New York courts have held that banks owe non-customer third parties no common law duty of care (see, e.g., *Century Bus. Credit Corp. v. N. Fork Bank*, 246 A.D.2d 395, 396 (1st Dep't 1998); accord *Agape*, 681 F. Supp. 2d at 360), "Plaintiffs' claims rest entirely on alleged federal law duties." Def. Mem. at 4. Not so. Federal courts "may not announce a duty of care where the New York courts have declined to do so; nor may [they] impose a duty of care based upon a statute that does not permit a private right of action." *Aiken v. Interglobal Mergers & Acquisitions*, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) (declining to recognize a common law duty of care predicated upon the BSA's requirements); *see also Agape*, 681 F. Supp. 2d at 360–61 (same). Thus, while this case might require a court to decide whether, under New York common law,

banks owe third parties a duty of care, that question is emphatically one of state law. *Cf. Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 15 (2d Cir. 2015) (certifying to the New York Court of Appeals the question "whether drug testing regulations and guidelines promulgated by [federal agencies] create a duty of care for drug testing laboratories and test program administrators under New York negligence law").

Defendants also argue that Plaintiffs "rely on federal law for their 'Fraud on the Regulator' claim" (Def. Mem. at 11), which vaguely alleges that Defendants defrauded federal regulators by failing to file accurate suspicious-activity reports (Compl. ¶¶ 178–189). No New York court has recognized a fraud-on-the-regulator claim. Indeed, the New York Court of Appeals recently held, in a case involving misrepresentations to federal regulators, that "third-party reliance"—"where a non-plaintiff third-party is alleged to have relied on the misrepresentations in a manner that caused injury to the plaintiff"—"does not satisfy the reliance element of a fraud claim." *Pasternack v. Lab. Corp. of Am. Holdings*, 2016 WL 3543713 (N.Y. June 30, 2016) (plaintiff failed to state a fraud claim against a drug-testing laboratory whose false statement to the Federal Aviation Administration caused the revocation of plaintiff's license). Thus, even if a disputed federal question were embedded in Plaintiffs' fraud-on-the-regulator claim, that claim is "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit" that, in analyzing subject-matter jurisdiction, the Court may disregard it. *Taldone v. Barbash*, 2014 WL 1800794, at *4 (E.D.N.Y. May 5, 2014).

Plaintiffs say they will rely on the BSA to prove Defendants' knowledge of the Ponzi scheme—an element of their aiding-and-abetting claims. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 544 (S.D.N.Y. 2009) (under New York law, aiding-and-abetting claims require actual knowledge of the underlying wrong). But to prove that element, Plaintiffs "need not establish" a

8

violation of the BSA, for "a trier of fact might conclude that the activity establishes knowledge of the fraud irrespective of whether the conduct also amounts to a violation of the BSA." *Fornshell v. FirstMerit Bank, N.A.*, 2010 WL 4835771, at *2 (N.D. Ohio Nov. 23, 2010) (finding no jurisdiction over state law claim predicated on violations of the BSA). Therefore, the aiding-and-abetting claims, too, do not necessarily present a federal question.[2]

Even if any of Plaintiffs' claims necessarily presented federal issues, those issues might not be in actual dispute. As another district court noted in a similar case:

> [Defendants do] not argue that [they are] not subject to the Bank Secrecy Act and regulations upon which Plaintiffs rely. Nor do [they] argue in response to the Motion to Remand that, under the circumstances of this case, [they were] not required to file [suspicious-activity reports]. The Complaint simply alleges that federal law required [Defendants] to file [suspicious-activity reports] and [they] did not. Contrary to [Defendants'] conclusory assertions, nothing about these allegations suggests that the Court will need to construe or interpret federal law in the course of adjudicating the parties' dispute.

*Shtutman*, 2014 WL 1464824, at *3. Unlike in *Grable* and *Gunn*—where it was "clear from the outset" that the court would need to decide specific issues of tax and patent law—here, "the nature of the cause of action and the Complaint's factual allegations do not present a clear dispute of federal law." *Id.* (citing *Grable*, 545 U.S. at 510–11; *Gunn*, 133 S. Ct. at 1062–63).

Moreover, even if this case presented a federal question, that question would not be substantial. "The substantiality inquiry" looks beyond the "particular parties in the immediate

---

[2] Defendants also argue that Plaintiffs' claims "trigger[] a host of federal law considerations" because federal regulations prohibit disclosure of suspicious-activity reports and thus may prevent Defendants from meeting discovery obligations, mounting a defense, or both. Def. Mem. at 16; *see id.* (citing 12 C.F.R. § 21.11(k)(10)(i)). Initially, there may be no merit to this concern. *See Shtutman*, 2014 WL 1464824, at *4 (concluding that although "it appears that individual banks cannot make litigation-related disclosure decisions, [] the Comptroller of the Currency can," and therefore the "anticipated conflict" between defendant's discovery and statutory obligations "is speculative at best"). In any event, "under the 'well-pleaded complaint rule,' federal jurisdiction is present only if a question of federal law appears on the face of the plaintiff's 'well-pleaded complaint'—thus requiring a court to ignore any and all answers, defenses, and counterclaims." *Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366, 372 (E.D.N.Y. 2014). Issues regarding Defendants' anticipated defense and hypothetical discovery conflicts are irrelevant.

suit" and focuses instead on "the importance of the issue to the federal system." *Gunn*, 133 S. Ct. at 1066. It is not enough "that in determining whether Defendants' conduct meets [a statutory] standard, a court may be required to interpret certain provisions of the [statute], and may thereby affect the development of the law." *Pritika v. Moore*, 91 F. Supp. 3d 553, 559 (S.D.N.Y. 2015). "[C]ourts have typically found a substantial federal issue only in those exceptional cases that go beyond the application of some federal legal standard to private litigants' state law claims, and instead implicate broad consequences to the federal system or the nation as a whole." *Id.* at 558.

The Supreme Court has held that the absence of a private right of action, while not dispositive, is evidence of "a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986); *see also Grable*, 545 U.S. at 318 (quotation omitted) ("the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires"). On the other hand, the Second Circuit has said that "pure question[s] of law, . . . question[s] that will control many other cases[,] and questions that the government has a strong interest in litigating in a federal forum" are "more likely to be a substantial." *Fracasse v. People's United Bank*, 747 F.3d 141, 145 (2d Cir. 2014) (quoting *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 842 (11th Cir. 2013)).

All of these considerations counsel against the exercise of federal jurisdiction. The BSA does not provide a private right of action, and the government does not have any interest in the outcome of tort litigation between private parties. The federal issues raised by this case, if any, would involve "a fact-specific application of the regulations . . . that does not implicate the validity of the regulations themselves, or have any other broader effect on federal interests."

*Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 F. App'x 87, 90 (2d Cir. 2014). Certainly they would not control the outcome of other cases. *See Fornshell*, 2010 WL 4835771, at *3. Finally, exercising federal jurisdiction over this case would clearly "disturb[] [the] congressionally approved balance of federal and state judicial responsibilities" by "herald[ing] a potentially enormous shift of traditionally state cases into federal courts." *Grable*, 545 U.S. at 314, 319; *see Shtutman*, 2014 WL 1464824, at *5; *Bottom v. Bailey*, 2013 WL 431824, at *7 (W.D.N.C. Feb. 4, 2013); *Whittington*, 2012 WL 4846484, at *5.

In sum, because Plaintiffs' claims do not "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," this Court lacks subject-matter jurisdiction and must remand the case to state court. *Grable*, 545 U.S. at 314.

## Conclusion

Plaintiffs' motion is GRANTED, and this action is REMANDED to New York Supreme Court, Kings County.

SO ORDERED.

Dated: Brooklyn, New York
July 15, 2016

/s/
I. Leo Glasser
United States Senior District Judge